B. F. KILPATRICK, *Administrator, et al.* v. R. C. BRENNAN.

(Filed March 4, 1904.)

JUDGMENT OF COURT ON MATTERS OF FACT—Not Disturbed, When. Where the matters involved in a decision of the district court are purely matters of fact, and the jury is waived, and the cause is submitted to the court, the decision will not be disturbed by this court if the evidence reasonably tends to support the judgment of the court.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before C. F. Irwin, Trial Judge.*

*J. C. Robberts* and *J. C. Strang,* for plaintiffs in error.

*W. W. Noffsinger,* for defendant in error.

STATEMENT OF FACTS.

This action was brought by the plaintiffs in error, B. F. Kilpatrick, as administrator, and Katie Kilpatrick and Mary A. Kennedy, daughters and heirs at law of John O'Conner, deceased. The object of the action was to set aside a deed from John O'Conner and wife to R. C. Brennan, the defendant. The deed from O'Conner and wife to Brennan was executed on the 23rd day of November, 1896, and conveyed to Brennan the southeast quarter of section five, in township sixteen north, range six west of the Indian Meridian, in Kingfisher county, Oklahoma.

The petition alleges the death of O'Conner and wife; that Kilpatrick is the administrator of John O'Conner; that the other plaintiffs are daughters and the only surviving heirs of John O'Conner, deceased; that O'Conner and wife Ann occupied the land conveyed as a residence until the date of their deaths, the wife dying about the 10th day of December, 1897, and the husband about the first of September, 1900, both parties dying intestate on the land conveyed; that O'Conner and his wife were old and infirm, he being about sixty-five years old, and his wife about seventy-five, at the time of their deaths; that they were in bad health, and in the month of August, 1895, Ann O'Conner was afflicted with a severe stroke of paralysis, and from the time she was first afflicted, she grew gradually more helpless, and became unable to talk or understand what was said to her; that about two years prior to her death, she was confined to her bed

as helpless as a child, unable to understand anything that was said to her, and entirely unconscious of anything that was said or done about her, and was in this condition during all of the month of November, in the year 1896; that the defendant, Brennan, resided in the neighborhood of the O'Connors, was a member of the same church, and was a frequent visitor at the O'Connor home; and, for the express purpose of obtaining their confidence and taking advantage of their infirm and weak condition of both mind and body, and for the purpose of obtaining their property, and falsely and fraudulently cheating them out of the land above described, by undue influence and by false and fraudulent representations of friendship, he obtained the confidence of John O'Conner, who was at the time an old man, in bad health, very weak both in mind and body, and sorely depressed because of the condition of his wife; that on the 23rd day of November, when he was in the condition last above mentioned, and under the influence of the said Brennan, and at a time when the said Ann O'Conner was confined to her bed, and had been so confined to her bed for more than one year past by successive strokes of paralysis, and at a time when the said Ann O'Conner was entirely helpless and unable to rise from her bed, with her mind so shattered and paralyzed that she could not talk or understand what was said to her, and had to be fed and cared for as a small child, and knew absolutely nothing as to what was going on about her, the said R. C. Brennan falsely and fraudulently went to the home of the said O'Conners, and by wicked and undue influence then and there used over him, procured the said John O'Conner to sign the deed mentioned for said tract

of land, from John O'Conner and Ann O'Conner to the said R. C. Brennan, by physical and mechanical force, without the knowledge of the said Ann O'Conner, and at a time when the said Ann O'Conner was *non compos mentis,* and knew absolutely nothing of what was done or going on about her, and procured her and caused her, the said Ann O'Conner, to make her mark, or caused her mark to be made, as her signature to said deed; all of which was falsely and fraudulently done for the purpose of cheating and defrauding the said O'Conners out of the land described; that the value of the land at the time was not less than two thousand dollars; that the consideration named in the deed was one thousand dollars, but in truth and in fact, there was no consideration whatever paid; that the said deed was obtained by fraud and false representations, and without any consideration whatever, in the manner and form set out.

The petition contains other allegations as to the Union Central Life Insurance Company, to the effect that the insurance company made a loan upon the said land to the defendant, Brennan, and took as security therefor a mortgage to secure the payment thereof; that the deed and mortgage were both filed for record in the office of the register of deeds of Kingfisher county; that the mortgage was made while John O'Conner was still living upon the land, and was for the sum of eight hundred dollars, payable in ten years after date, with interest at the rate of eight per cent per annum.

The petition also contains an allegation that at the time of the death of John O'Conner, he was indebted to various persons, and since the appointment of the plaintiff,

Kilpatrick, as administrator, claims had been filed against the estate, and that the administrator had been unable to obtain any property, either personal or real, whatever, with which to pay the claims against the estate.

The prayer of the petition is that the court decree that the deed from O'Conner and wife to Brennan be declared null and void, and be cancelled, and that the mortgage from Brennan to the Union Central Life Insurance Company be also cancelled and declared null and void.

Issues were joined in the case by filing an answer to this petition, and a trial was had before the court without a jury. The court, after taking the case under advisement from the 27th day of September to the 12th day of Otcober, found the issues in favor of the defendant, and rendered judgment against the plaintiff for the costs of the action.

A motion for a new trial was filed and overruled, and the cause appealed to this court.

Opinion of the court by

PANCOAST, J.: The record shows the gravamen of the action to be the fraud and deception practiced upon O'Conner and his wife when in an enfeebled condition, the wife particularly being in such mental condition that she was unable to make a contract, and the entire want of consideration in the contract.

The record fails to disclose any direct evidence whatever of any promise, act or persuasion, undue influence or deception practiced by Brennan upon either of the O'Conners. It might possibly be claimed that these facts were inferentially shown by the evidence. This would entirely depend upon the construction given to the testimony of cer-

tain witnesses. The material part of the evidence offered
by the plaintiff below was that bearing upon the condition
of the mind of Mrs. O'Conner at or near the time of the
conveyance. It is contended in plaintiff's brief, that there
was no conflict in the testimony of the witnesses as to the
condition of Mrs. O'Conner's mind, yet the record discloses
the number of witnesses who testified upon that question to
be about six on one side and eight upon the other. There
is no evidence whatever that John O'Conner was not a man
in his full mental vigor, such as men usually are at the age
he was when he signed the deed sought to be cancelled by
this action. He was then sixty-five years old. That Mrs.
O'Conner was suffering physically from the effect of a stroke
of paralysis which had occurred something near a year prior
to the execution of the deed, there is no question, and at the
trial there was no attempt to deny the fact. But, what ef-
fect, if any, that affliction had upon her mental condition
was the only serious controversy at the trial. There were
two or three witnesses who testified to statements made to
them by John O'Conner, in the absence of Brennan, and
subsequent to the execution and delivery of the deed, tend-
ing to show that the transfer was not made in good faith.
These statements, however, are so clearly incompetent to
sustain any of the allegations in the petition that this court
will not consider them here. They were probably allowed
to be made as many such are when a case is being tried to
the court without a jury, and no doubt were not weighed
by the court in his consideration of the case.

Notwithstanding the fact that the plaintiff offered no
evidence to prove the allegation of fraud, deception, undue

influence and want of consideration, the defendant offered evidence showing the financial condition existing between O'Conner and himself, and showing that he had paid to O'Conner, in a manner understood and agreed upon by them, the full value of the land conveyed to him. A fairly well kept book of account of their transactions was offered in evidence, showing each specific item, both debit and credit of the account between them. This was contradicted in no manner whatever, so that not only did the plaintiff fail to show a want of consideration for the transfer, but the defendant offered abundant evidence upon that point. Taking the defendant's evidence alone, it indicates that the dealing between himself and O'Conner was fair, honorable and upright, and this is contradicted, as stated before, only by inferences drawn from the testimony of the several witnesses produced by plaintiff.

The main and really the only contention of plaintiff in error in this court is that at the time of the transfer, Ann O'Conner was in such a mental condition as to be incapable of joining in the transfer or assenting thereto, and that, as a legal result, the conveyance was void for the reason that the land sought to be conveyed was a homestead, the law requiring conveyances in such cases to be the joint act of the husband and wife.

The real proposition involved, that is, whether Ann O'Conner was or was not in such mental condition as to be capable of conveying the premises or assenting thereto, is one which must be determined from the evidence. The legal proposition may be conceded that if Ann O'Conner had not sufficient mental capacity to make a legal contract, then her

act of joining in the conveyance was a nullity, and as a matter of course, the conveyance would be void. But how is this court to determine the mental capacity of Ann O'Conner? Plaintiff in error says there is no conflict in the testimony of the witnesses as to the condition of Mrs. O'Conner's mind at or near the time of this conveyance; yet we find from an examination of the record that Vincent Brennan, in testifying upon this subject, says that he saw Mrs. O'Conner when the deed was signed; that the deed was read over to her before she signed it, and was explained to her; that she said that she knew what it was; and that the colored girl there explained it to her. This same witness also says that he did not see anything at that time to indicate that Mrs. O'Conner did not know what she was doing, or did not understand it; that when they rode up there, she was sitting by the stove, in a chair, with a table close by, and that she turned around and signed the deed at the table, signing by making her mark; that Mr. Burwell the notary public, himself, this colored girl, a white man, Mr. O'Conner, and Mrs. O'Conner were all there together; that three of the persons signed the deed as witnesses.

Mr. A. C. Burwell testified that he did not have a clear recollection of all the matters that took place; that he went there to take the acknowledgment of the deed; that he thought he had a talk with Mrs. O'Conner; that he waited there a while, but did not remember much about the conversation, but that his recollection was that he went there with Mr. Brennan in a buggy, and that his son went there on a wheel; that when he got out there, Mr. O'Conner was not in the house; that Mrs. O'Conner was sitting in a large

invalid's chair, and the colored girl was there. Mr. Brennan went to find Mr. O'Conner, and during the time he was away, the witness was in the room talking with Mrs. O'Conner, but does not remember any of the conversation that he had with her; that he must have talked some ten minutes with her; that from his observation of her condition, he thinks she knew what she was doing when she signed the deed; nothing occurred to him at the time which caused him to think she was not rational, and in her right mind; that he saw she was an invalid, and was sitting in the chair; that she had recovered somewhat, or was convalescing from some attack she had had, and was feeling better; that if anything had happened to make him think that she was not of sound mind, he would not have taken the acknowledgment to the instrument.

Mr. Childers, also a witness for the defense, testified that he was acquainted with the parties; that he worked on an adjoining place; that he visited at the O'Conners' place three or four times; that he had a conversation with Mrs. O'Conner, and from what occurred in his presence, she seemed so far as he could tell, to know what she was doing. Mr. Albert Mount, also, testified that he was acquainted with the O'Conners; that in the fall of '96 he was working for Brennan; that he visited at O'Conner's house; that at one time he went into the house to ask about the health of Mrs. O'Conner; that he shook hands with O'Conner, and asked Mrs. O'Conner if she knew him, and she held out her hand and said, "This is Mr. Mount;" that she shook hands, and he asked after her health, and she said, "As well as ever." At that time Mrs. O'Conner told Mount that they had sold their

place. Mr. Davison also testified that he lived adjoining farms with the O'Conners; that he was at their house at different times, and that his wife called there to see her; that at times she was going about the house, doing her work; that he noticed nothing wrong; that she made inquiry about a girl, wanted to hire a girl; says he saw nothing wrong with her mind; that he thinks she would understand the application and nature of a contract and a deed. Mrs. Nellie Brennan was also called; says that she resided just across the road from the O'Conners, and was there frequently; that she knows of Mrs. O'Conner's having a stroke of paralysis, but did not know the year; that she went to her house, and waited on her during her sickness; that Mrs. O'Conner was getting better when the witness moved to town; that she did not notice that her mind was in any way different during the sickness than it was at other times. The witness states that she thinks that Mrs. O'Conner would be able to know the nature of a deed; that she knew the witness, and talked to her very well; and that she seemed to know everything, and talked rationally about the household affairs.

All of this testimony was concerning a period of time following the stroke of paralysis. Mrs. Brennan is the wife of the defendant, R. C. Brennan.

This, in the main, is the testimony of the witnesses for the defendant upon the proposition as to the mental condition of Mrs. O'Conner at the time that the deed was executed.

With this testimony in the record before us, it certainly cannot be held that there was no conflict in the testimony of the witnesses as to the condition of Mrs. O'Conner's mind at the time of the conveyance. The statements of the

witnesses on behalf of the plaintiff, upon this subject, were just as positive, and perhaps a little more positive, that Mrs. O'Conner's mind was in such a condition that she was incapable of contracting, as those of the defendant that her mind was not affected; so that, as disclosed by the record, we can say that there was a square conflict of the evidence upon this one main proposition.

Under such circumstances, this court will not undertake to weigh the evidence, nor will it set aside the findings of the trial court. An appellate court is never warranted in reversing the trial court on the facts, unless there is an entire failure of proof upon some material and necessary point. This rule has been so repeatedly upheld both in this Territory and in Kansas, from which state our code is taken, that it has become a settled rule of practice. There have been various ways of stating this proposition by the different courts, but the statement of the law upon this subject, as contained in the case of *Carmichael v. Pierce et al.* 10 Okla. 176, is probably as good a statement as any we have noticed. It is as follows:

"Where the matters involved in a decision of the district court are purely matters of fact, and the jury is waived and the cause is submitted to the court, the decision will not be disturbed by this court if the evidence reasonably tends to support the judgment of the court."

The other decisions of this court upon this proposition are: *Osborne v. Case et al.,* 11 Okla. 479; *Smith v. Spencer,* 8 Okla. 259; *Douthitt v. The Territory,* 7 Okla. 55.

Some of these cases cite cases in various states in support of the proposition. We think the question, being one of practice, is so well settled by the decision of this court,

that it is unnecessary to cite the decisions of other courts in support thereof.

The trial court had before it the witnesses; it had the advantage of looking into their faces, and could determine more accurately the truthfulness or untruthfulness of their statements. It could note their demeanor upon the witness stand, their conduct generally, their apparent intelligence, and all other matters that go to help a trial court in determining the weight of the evidence and the credibility of the witnesses. For the reasons herein expressed, the judgment of the trial court is affirmed.

Irwin, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.